## UNITED STATE DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARAMOUNT PHARMACY GROUP LLC, | Case No. 7:25-cv-04780-CS |
| Plaintiff, | Hon. Cathy Seibel |
| v. | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTIVE RELIEF** |
| MUHAMMED ASSAD IQBAL, | |
| Defendant. | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR TEMPORARY INJUCTIVE RELIEF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

FACTS ................................................................................................................................ 1

LEGAL STANDARD.......................................................................................................... 6

ARGUMENT ...................................................................................................................... 8

    I. There is No Likelihood of Actual or Imminent Irreparable Harm to Plaintiff Absent Emergency Relief Since Any Alleged Harm to Plaintiff is Compensable with Money Damages. ........................................................................................................................ 9

    II. Plaintiff Does Not Have a Substantial Likelihood of Success on the Merits...................... 11

        A. The Contracts under which Plaintiff Brought Suit Are Not Enforceable Since They Lack Consideration and Were Executed as a Result of Fraud in the Factum. .............................. 11

        B. Plaintiff Would Not Prevail in Obtaining a Permanent Injunction because Paramount Failed to Establish It Would Suffer Irreparable Harm. ......................................................... 13

        C. Plaintiff Would Not Prevail on the Conversion Claim because Plaintiff Cannot Establish that Paramount is the Legal Owner of or has an Immediate of Possession to the Stock in Pharmacy. ............................................................................................................................ 13

        D. Plaintiff Would Not Prevail on Its Breach of Contract Claim because Paramount Does Not Have Any Enforceable Contracts with Iqbal. ............................................................... 14

        E. Plaintiff Would Not Prevail on Its Tortious Interference Claim Because No Valid Contract Existing between Plaintiff and Pharmacy for Defendant with which Defendant Could Have Interfered. .................................................................................................... 15

    III. The Harm to Defendant Outweighs Any Hardship Plaintiff May Experience. .................. 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Benedict v. Amaducci*, No. No. 92 Civ. 5239 (KMW), 1993 WL 87937 (S.D.N.Y. Mar. 22, 1993) .................................................................................................................. 6

*Gianelli v. RE/MAX of New York, Inc.*, 41 N.Y.S.3d 273 (2d Dep't 2016) .................................. 14

*Giardini v. Settanni*, 70 N.Y.S.3d 57 (2d Dep't 2018) .................................................................. 14

*Gilbert v. Rothschild*, 280 N.Y. 66 (1939) .................................................................................... 12

*Hanna v. Plumer*, 380 U.S. 460 (1965) ........................................................................................... 6

*HarperCollins Publishers L.L.C. v. Gawker Media LLC*, 721 F.Supp.2d 303 (S.D.N.Y. 2010) 7, 8

*Icy Splash Food & Beverage, Inc. v. Henckel*, 789 N.Y.S.2d 505 (2d Dep't 2005) ..................... 13

*In re Feit & Drexler, Inc.*, 760 F.2d 406 (2d Cir. 1985) .................................................................. 7

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ............... 6, 8, 11, 13

*Nagan Const., Inc. v. Monsignor McClancy Memorial High School*, 986 N.Y.S.2d 532 (2d Dep't 2014) ........................................................................................................................................... 15

*S.E.C. v. Unifund SAL*, 910 F.2d 1028 (2d Cir. 1990) .............................................................. 7, 8

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ............................................................................. 7

*See Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ...................................................................... 6

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995) ........ 7, 8, 9

*Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356 (2d Cir. 1976) ......................... 6

*U.S. Bank National Association v. Reddy*, 199 N.Y.S.3d 123 (2d Dep't 2023) ........................... 12

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) .......................... 7, 8, 9, 11

**Rules**

FED. R. CIV. P. 65 ..................................................................................................................... 1, 6, 7

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY INJUCTIVE RELIEF

Defendant Muhammad Assad Iqbal s/h/a Muhammed Assad Iqbal ("Defendant" or "Iqbal"), by and through his attorneys, Suri Law PLLC, and pursuant to Fed. R. Civ. P. 65, files this Response in Opposition to Plaintiff's Motion for Temporary Injunctive Relief, and in support thereof states as follows:

## INTRODUCTION

Plaintiff Paramount Pharmacy Group LLC ("Plaintiff" or "Paramount") is seeking a preliminary injunction directing Defendant to transfer ownership in Health Haven Corp. ("Pharmacy") to Paramount on the basis that Defendant materially breached his obligations under the secured promissory note, security agreement, escrow agreement (the "Loan Documents") and the master services agreement ("MSA"). Plaintiff's entire case is predicated on Paramount having made a loan to Defendant; however, to date, Paramount has not furnished any consideration to Iqbal in connection with the purported loan. Pl.'s Pet., ECF No. 5 – Attach. 1, Ex. A; Pl.'s Proposed Order to Show Cause, ECF No. 5 – Attach. 2, Ex, B; Pl.'s Mem. Of Law, ECF No. 5 – Attach. 3, Ex. C. None of the aforementioned agreements are supported by consideration or are otherwise enforceable. Rather, Paramount fraudulently procured Iqbal's signature on the aforementioned agreements. Therefore, Defendant respectfully requests that this Honorable Court deny Plaintiff's Motion for Temporary Injunctive Relief.

## FACTS

Neither Paramount nor any agent, representative, or member of Paramount has ever remitted, expended, transferred, or otherwise paid any amount of money to Iqbal or on his behalf to any person in connection with the Loan Documents, MSA, or otherwise in connection with

1

Iqbal's acquisition of Pharmacy. (*See* Ex. 1 – Secured Promissory Note; Ex. 2 – Security Agreement; Ex. 3 – Escrow Agreement; Ex. 4 – Master Services Agreement.)

In early 2021, Iqbal met Ibrar Nadeem ("Nadeem") through a mutual friend. Iqbal knew of Nadeem as well connected in the local Pakistani community. The two became acquaintances and bonded over their shared hometown of Gujrat, Punjab, Pakistan. In April 2024, Nadeem approached Iqbal and proposed that Iqbal purchase Pharmacy. However, the acquisition did not materialize since Nadeem arranged for Melissa Dobson ("Dobson") to buy Pharmacy instead. In early 2025, Nadeem requested that Iqbal purchase Pharmacy from Dobson. Nadeem told Iqbal that Paramount would finance Pharmacy's operations and payroll, pay Iqbal a Six Thousand Dollar ($6,000.00) monthly salary, give Iqbal 30% of Pharmacy's profits and that Paramount would handle management and operations of Pharmacy. Upon information and belief, Nadeem is the majority owner or sole member of Paramount. Nadeem further represented that Iqbal would simply have to work at the Pharmacy and open and close it.

Before Iqbal closed acquisition of Pharmacy, Nadeem told Iqbal he needed to sign a few documents as a mere formality to finalize the working arrangement the parties had previously discussed orally. Iqbal was represented in his acquisition of Pharmacy by Jeffrey Heldman, Esq. of Vasquez Heldman LLC ("Heldman"). (Ex. 5 – Pharmacy Closing Documents at 20.)  Heldman also prepared the Loan Documents and MSA. (Ex. 6 – Heldman Email dated 1.31.25 at 1.) After Heldman drafted and circulated the Loan Documents and MSA, Heldman requested that Nadeem and Iqbal execute a waiver of conflict of interest. *See Id*. While Iqbal signed the acknowledgement and executed the attached form, he did not indicate a position as to whether or not he was comfortable waiving his conflict of interest with Nadeem. (Ex. 7 – Heldman Conflict Waiver at

5.) Iqbal did not give informed consent to waive any conflict with Paramount and was under the impression that Heldman was representing his interests.

Iqbal did not review any of the Loan Documents or MSA prior to signing them, in reliance on Nadeem's representations that the documents reflected their agreement, and based on Heldman's representation that he was representing and protecting Iqbal's legal interests. Iqbal did not even know the instruments he was executing were associated with debt obligations.

At no time were the contents of the Loan Documents or MSA explained to Iqbal. Iqbal's native languages are Punjabi/Shahmukhi and Urdu. Iqbal graduated with the equivalent of a bachelor's degree in business administration from Karachi University in 1988 in Pakistani. Iqbal came to the U.S. and was a taxicab driver for twenty-five years. In or around 2020, Iqbal began working in construction. After approximately four years, Iqbal left construction; then he met Nadeem who sold Iqbal on the idea of owning Pharmacy.

In reliance on Nadeem's representations, Iqbal purchased the 100% of the outstanding stock in Pharmacy on February 6, 2025 in exchange for his personal assumption of "[a]ny and all liability for the June 25, 2024 promissory note issued by Richard Sperrezza to Melissa Dobson in the principal amount of Two Hundred Thousand Dollars ($200,000.00)" and of the other liabilities of Pharmacy. (Ex. 5 at 3.) Richard Sperrezza ("Sperrezza") owned Pharmacy prior to Dobson. Sperrezza financed the sale to Dobson through the promissory note dated June 25, 2025 (the "Pharmacy Note") which Iqbal assumed. (*Id*.)

After Iqbal acquired the Pharmacy, he learned that employees were not being paid. Iqbal also discovered Pharmacy was financially struggling. Iqbal reached out to Nadeem to request funds to cover Pharmacy's payroll and operational expenses, but Nadeem claimed that he did not have any money and offered to show Iqbal screenshots of his negative bank balance. Any time Iqbal

brought up funding, Nadeem declined to financially contribute to Pharmacy and claimed he could not afford to.

In an effort to increase business, Iqbal began soliciting friends and family to bring their prescriptions to Pharmacy. Iqbal also established working relationships with providers, prescribers, and suppliers to work with the Pharmacy due to its diminished reputation. Iqbal has diligently run Pharmacy from 9:00 a.m. to 6:00 p.m., every day Monday through Friday, and from 9:00 a.m. to 3:00 p.m,. on Saturdays. Additionally, to date, Iqbal has personally invested over Sixty-Five Thousand Dollars ($65,000.00) into Pharmacy. Further, Iqbal has been working with Sperrezza to pay off the Pharmacy Note. Iqbal also has been working without any salary or distributions since acquiring Pharmacy. When Iqbal realized that Nadeem and Paramount would never make good on their promises, Iqbal offered to sell his equity in Pharmacy to Nadeem. However, Nadeem immediately declined.

At some point, Nadeem advised Iqbal that profit margins in pharmacies are small and that Iqbal could make more money if he allowed Paramount to use its own means of trying to create additional profit. Iqbal was suspicious of Paramount's proposed business practices and advised that he preferred to try and drum up business through traditional means. Iqbal felt uncomfortable following his conversation with Nadeem. Nadeem indicated that he wished to cease working with Iqbal if Iqbal would not cooperate with Paramount's proposed scheme. Iqbal felt Nadeem was trying to intimidate him into Paramount's business scheme; however, Iqbal remained firm in his position.

To date, Paramount has not contributed at all to the operations of the business in any way. Further, at no material time did Plaintiff perform services under Section 1 of the MSA or otherwise, nor has Plaintiff made any actual loan or furnished any consideration to Iqbal in connection with

the Loan Documents or MSA. (Ex. 4 at 1; Ex. 1.) Despite Paramount's lack of performance under the Loan Documents, the MSA, and the oral agreements between the parties, on April 29, 2024, Heldman sent Iqbal correspondence on behalf of Paramount alleging wrongdoing on the part of Iqbal and breach of the Loan Documents and MSA. Pl.'s Letter to Def., ECF No. 5 – Attach. 9, Ex. I. On May 8, 2025, Heldman sent Iqbal another correspondence on behalf of Paramount, advising that he would release the stock certificate held in escrow with Heldman to Paramount due to Iqbal's "default" on the Loan Documents. Pl.'s Letter to Def., ECF No. 5 – Attach. 11, Ex. K. On May 13, 2025, Heldman sent Iqbal another letter advising Iqbal that he released the stock certificate to Paramount, that Paramount demands all corporate records, and that Paramount demands Iqbal vacate Pharmacy's premises.

Iqbal later learned, after speaking with other business associates of Paramount, Plaintiff was involved in at least one other lawsuit in the State of New Jersey involving a similar situation: *Mir et al. v. Naz et al.*, Case No. ESX-L-008411-21 in the Superior Court of New Jersey for Essex County. In the case in New Jersey, Nadeem was accused of wrongfully asserting ownership over another individual's equity in a pharmacy, though the case is ongoing and no final determination has been made. Iqbal also discovered that Dobson had similar issues with Paramount and Nadeem, that Nadeem made similar promises to Dobson orally which Nadeem breached, and that Paramount's failure to finance Pharmacy caused Dobson's exit.

Iqbal has continued to make good faith efforts to operate and grow Pharmacy throughout these disputes and will continue to do so. Upon information and belief, at no material time has the Pharmacy suffered financially due to Iqbal's acts, omissions, or representations as owner or operator of the Pharmacy.

## LEGAL STANDARD

FED. R. CIV. P. 65 governs the granting of temporary injunctive relief. In diversity actions, federal courts generally apply state law when deciding matters of substantive law and federal rules of procedure for procedural matters, provided such procedural rules are not outcome determinative. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citations omitted). However, when a Federal Rule is applicable in a situation, federal courts should apply the Federal Rule so long as the Rule "transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Id.* at 471. The Southern District of New York applies FED. R. CIV. P. 65 in determining the appropriateness of granting emergency, temporary injunctive relief. *See Benedict v. Amaducci*, No. No. 92 Civ. 5239 (KMW), 1993 WL 87937, at n.13 (S.D.N.Y. Mar. 22, 1993) (citing *Ferrero v. Associated Materials Inc.*, 923 F. 2d 1441, 1448 (11th Cir. 1991)).

The standard for injunctive relief requires Plaintiff show (1) actual or imminent irreparable harm; and (2) either (a) likelihood of success on the merits, or (b) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (citations omitted). In evaluating likelihood of success on the merits, plaintiffs must establish a prima facie case for relief and that there is probability of success on the merits. *See Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010).

"[T]he normal function of the preliminary injunction is to maintain the status quo pending a full hearing on the merits." *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976). A preliminary injunction should not be granted if it would effectively give a plaintiff "substantially the ultimate relief" sought without a trial and without a showing of probable success on the merits. *Id.* at 1360.

Further, "equity cannot intervene where there is an adequate remedy at law." *Id.* at 1359. If monetary damages are adequate to compensate the movant for its injury, then a preliminary injunction should not be granted. *See In re Feit & Drexler, Inc.*, 760 F.2d 406, 415-417 (2d Cir. 1985) (citation omitted). The movant has the burden of showing monetary damages would be inadequate. *Salinger v. Colting*, 607 F.3d 68, 76 (2d Cir. 2010) (citation omitted). The loss of potential profits or business is compensable in monetary damages. *See Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72-73 (2d Cir. 1979).

Under FED. R. CIV. P. 65, there are two types of temporary injunctive relief. First: a temporary restraining order ("TRO") which is a "short-term protective device" intended to "protect a party from irreparable harm until more lasting relief, such as a preliminary injunction, can be sought." *HarperCollins Publishers L.L.C. v. Gawker Media LLC*, 721 F.Supp.2d 303, 305 (S.D.N.Y. 2010) (citing *American Broadcasting Companies, Inc. v. Cuomo*, 570 F.2d 1080 (2d Cir. 1977)). The second form of relief is a preliminary injunction which is "an extraordinary and drastic remedy…that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

A preliminary injunction can either be prohibitionary and maintain the status quo, or it can change the status quo by commanding some act. *See Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (citation omitted). The latter is known as a "mandatory injunction." *Id.* "[A] mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Id.* A mandatory injunction requires a more substantial showing of likelihood of the moving party's success on the merits. *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990); *see also See Tom Doherty Associates, Inc*, 60 F.3d at 35

(holding that "…if a preliminary injunction will make it difficult or impossible to render a meaningful remedy to a defendant who prevails on the merits at trial, then the plaintiff should have to meet the higher standard of substantial, or clear showing of, likelihood of success to obtain preliminary relief").

## ARGUMENT

Plaintiff's Motion for Temporary Injunctive Relief is nothing more than a recitation of legal standards and false factual representations intended to obtain a preliminary injunction to usurp Iqbal's rights in Pharmacy, which Iqbal single-handedly runs. Even then, Plaintiff's application to this Honorable Court for relief does not satisfy the requirements of Fed. R. Civ. P. 65 and the related jurisprudence because Plaintiff neither satisfies the test under *Jackson Dairy Inc. v. H. P. Hood & Sons, Inc.*, nor did Plaintiff make sufficient allegations and arguments in its application for relief to satisfy Plaintiff's burden. 596 F.2d 70, 72 (2d Cir. 1979); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

The character of relief Plaintiff is seeking aligns with a mandatory injunction since Plaintiff is requesting that the Court issue an injunction or enter an order which commands acts by Defendant as opposed to a TRO where the Court would enter a short-term protective order protecting a party from harm pending a preliminary injunction or some other relief. *See Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (citation omitted); *see HarperCollins Publishers L.L.C. v. Gawker Media LLC*, 721 F.Supp.2d 303, 305 (S.D.N.Y. 2010) (citing *American Broadcasting Companies, Inc. v. Cuomo*, 570 F.2d 1080 (2d Cir. 1977)). Since Plaintiff is seeking a mandatory injunction, yhis Honorable Court should look for a clear, substantial showing that Plaintiff would succeed on the merits. *See Tom Doherty Associates, Inc*, 60 F.3d at 35; *see also S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990).

The burden or persuasion is also on Plaintiff given the extraordinary and drastic nature of such relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

This Honorable Court should deny Plaintiff's motion since (1) Plaintiff is unlikely to suffer any irreparable harm if this Honorable Court declined to issue a preliminary injunction. However, even if Plaintiff were to prevail in this matter, money damages would be adequate to compensate Plaintiff, so remedies at equity, such as injunctive relief, would be inappropriate; (2) Plaintiff is unlikely to prevail on the merits since Paramount is requesting relief based on unenforceable contracts and a loan that was never made; and (3) the undue hardship to Defendant would significantly outweigh any hardship alleged by Plaintiff.

### I. There is No Likelihood of Actual or Imminent Irreparable Harm to Plaintiff Absent Emergency Relief Since Any Alleged Harm to Plaintiff is Compensable with Money Damages.

Plaintiff does not allege with particularity any actual or imminent irreparable harm, nor does Plaintiff satisfy its burden to show that monetary damages would be insufficient if, *arguendo,* Plaintiff prevailed.

Plaintiff baselessly alleges Defendant is eroding the goodwill of Pharmacy and diminishing Pharmacy's value despite Iqbal being the only reason that Pharmacy is operable. Pl.'s Mem. Of Law at 10, ECF No. 5 – Attach. 3, Ex. C. Plaintiff also falsely accuses Defendant of "randomly shuttering" Pharmacy during normal business hours, though Plaintiff concedes that Iqbal "shares the desire to prevent the destruction of" Pharmacy. Pl.'s Mem. Of Law p 13, ECF No. 5 – Attach. 3, Ex. C. Plaintiff does not specify when, for how long, on how many occasions Pharmacy was shut during business hours, just generally that it was randomly closed at some point. Such vague, unspecific allegations should not considered a sufficient basis for the extraordinary relief Plaintiff is seeking especially where Plaintiff's allegations are materially false.

9

First, Iqbal has diligently maintained normal operating hours and has invested significant time and money in Pharmacy. Second, Iqbal has and continues to make good faith efforts to maintain Pharmacy's operations and expand the business. Finally, even if, *arguendo,* the single aforementioned allegation that Pharmacy was being closed randomly were true and sufficient to show irreparable harm, the Court could issue a preliminary injunction which would impose significantly less burden on Iqbal, directing Iqbal to keep Pharmacy open during normal business hours, absent emergencies, pending resolution of this litigation.

Notwithstanding the foregoing point, it is Defendant's position that injunctive relief is unnecessary in this matter since Plaintiff's remedies at law are adequate. Plaintiff's damages are purely economic. Even if, *arguendo*, the Court takes everything Plaintiff says in a favorable light and assumes that Plaintiff had a valid security interest in Pharmacy, Plaintiff's interest therein would not be absolute. Plaintiff's interest therein would be limited to collecting on the principal, interest, and fees owed on the loan, if such loan were actually made. Plaintiff's argument implies that it would acquire a vested interest in Pharmacy in perpetuity as a result of its claims; however, that fails to account for how Paramount would be unjustly enriched by the time and money Iqbal has invested into building up the Pharmacy from the dying business he acquired. Plaintiff also alleges a violation of the MSA in its application for relief, but that has easily quantifiable monetary damages to the extent any violation or material breach occurred. In fact, Plaintiff quantified its alleged injury in the amount of $1,687,622.10 when it first alleged that Iqbal engaged in some wrongdoing. Pl.'s Letter to Def. at 4, ECF No. 5 – Attach. 9, Ex. I.

Even if Plaintiff were entitled to additional damages for Pharmacy's theoretical loss of customers or business, that would be compensable in dollars and cents as well and is not so unique or irreparable that Plaintiff would qualify for injunctive relief. *See Jackson Dairy, Inc. v. H. P.*

*Hood & Sons, Inc.*, 596 F.2d 70, 72-73 (2d Cir. 1979). Plaintiff is unlikely to suffer any actual or imminent irreparable harm and has failed to allege anything to the contrary; and, to the extent Plaintiff has any damages, they would be compensable with money damages so injunctive relief should not be granted in this matter.

## II. Plaintiff Does Not Have a Substantial Likelihood of Success on the Merits.

It is not likely that Plaintiff would succeed in its claim on the merits since all of Plaintiff's claims are contingent upon the existence of enforceable contracts with Defendant, yet all of the contracts between Plaintiff and Defendant are either unsupported by consideration or otherwise unenforceable. Plaintiff carries the burden of persuasion, yet it has failed to allege specific facts in its application for relief to substantiate that Plaintiff may prevail on the merits. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiff again formulaically recites case law and cites that Plaintiff "has a likelihood of success" and that Plaintiff "has overwhelming evidence" and "proof". Nowhere in Plaintiff's application for relief does it argue or allege facts sufficient to satisfy the elements of Plaintiff's claims. Plaintiff's argument on the merits is wholly insufficient to establish a prima facie case for any of its claims as it completely lacks any substance.

### A. The Contracts under which Plaintiff Brought Suit Are Not Enforceable Since They Lack Consideration and Were Executed as a Result of Fraud in the Factum.

The threshold issue in Plaintiff's case is whether or not the Loan Documents and MSA are enforceable contracts. To established whether or not each contract is enforceable, Plaintiff must make a showing that there was (1) an offer, (2) acceptance, (3) consideration, (4) mutual assent, and (5) intent to be bound. *U.S. Bank National Association v. Reddy*, 199 N.Y.S.3d 123, 129 (2d

Dep't 2023). Plaintiff has not argued any of these elements were satisfied or that it is probable Plaintiff would prevail on the merits.

Perhaps Plaintiff failed to argue these matters because the elements are not met. First as to offer and acceptance, Plaintiff orally made an offer that was completely different than the writing furnished to Iqbal. Iqbal accepted the oral offer but never assented to the substance of the written agreements furnished to him for signature. Second, as to consideration, none of the agreements are supported by actual consideration since neither Paramount nor any agent, representative, or member thereof has ever remitted, expended, transferred, or otherwise paid any amount of money to Iqbal or on his behalf to any person in connection with the Loan Documents, MSA, or otherwise in connection with Iqbal's acquisition of Pharmacy. Paramount also failed to perform its duties under the MSA and did not assist Iqbal in management, operations, or accounting for Pharmacy. Instead, Nadeem continuously tried to sell Iqbal on various shortcuts to attempting to increase Pharmacy's revenue. Third, as to mutual assent, the parties clearly did not have a meeting of the minds given the differences in their intentions towards the arrangement. Fourth, Iqbal did not have an intent to be bound by the writings furnished to him and which he was fraudulently induced to enter into with Plaintiff.

It is Defendant's position that Plaintiff induced Iqbal's signatures on the Loan Documents and MSA by fraud in the factum. To show that there was no fraud in the factum, Plaintiff would need to show that (1) Plaintiff did not induce Iqbal to sign an instrument different than Plaintiff lead Iqbal to believe it to be and different than Iqbal understood to be, and (2) that an agreement of compromise in fact existed and was reflected in each agreement. *Gilbert v. Rothschild*, 280 N.Y. 66, 71 (1939) (citations omitted). Here, Plaintiff led Iqbal to believe that he was signing a variety of documents as formalities and that they would not affect the character of the business relationship

12

Iqbal intended to have with Plaintiff. Moreover, Iqbal was completely unaware at the time of signing that he was entering into agreements pertaining to any loans or debt-related obligations or pertaining to any financial obligations to Plaintiff outside of the profit-sharing the parties discussed prior to entering into any contracts with one another. In the alternative, Defendant would even assert, in the alternative, that an oral contract was created in the conversations between Nadeem and Iqbal since Iqbal relied on Nadeem's representations about the working arrangement with Plaintiff to his detriment causing him to assume the Pharmacy Note.

Therefore, it is not likely Plaintiff would prevail on the merits in any of its claims because Plaintiff has failed to establish a prima facie case that either the Loan Documents or MSA were enforceable contract and because Plaintiff would not be able to enforce the aforementioned agreements regardless since Iqbal's signature on them was caused by fraud in the factum.

**B. Plaintiff Would Not Prevail in Obtaining a Permanent Injunction because Paramount Failed to Establish It Would Suffer Irreparable Harm.**

To obtain a permanent injunction, Plaintiff must demonstrate that it will suffer irreparable harm without the injunction. *Icy Splash Food & Beverage, Inc. v. Henckel*, 789 N.Y.S.2d 505, 506 (2d Dep't 2005). As discussed above, Plaintiff does not specify any irreparable harm and only falsely claims that Defendant closes Pharmacy during regular business hours, causing loss of potential profits and business, both of which can be remedied by monetary damages *See Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72-73 (2d Cir. 1979). Since Plaintiff would not prevail on the merits as described above and as will be discussed further below, Plaintiff would be unable to prevail in obtaining a permanent injunction.

**C. Plaintiff Would Not Prevail on the Conversion Claim because Plaintiff Cannot Establish that Paramount is the Legal Owner of or has an Immediate of Possession to the Stock in Pharmacy.**

For the conversion claim, Plaintiff must make a showing that Plaintiff has "(1) legal ownership or an immediate right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing…to the exclusion of the plaintiff's right." *Giardini v. Settanni*, 70 N.Y.S.3d 57, 58 (2d Dep't 2018) (citations omitted). Again, Plaintiff has not argued any of these elements were satisfied or that it is probable Plaintiff would prevail on the merits.

First, Plaintiff does not have legal ownership of or any immediate right of possession in the stock, Pharmacy, or any property or assets of Pharmacy over which Plaintiff seek to exercise dominion since the security agreement under which Plaintiff purports to have acquired such right are unsupported by consideration and were caused to be executed by fraud in the factum. Second, Defendant is fully authorized to exercise dominion over Pharmacy and his ownership therein and to exclude Plaintiff therefrom. It would appear that Plaintiff manufactured a false loan and defrauded Iqbal into signing agreements possible so that Plaintiff could seize Pharmacy from Iqbal without paying value or assuming any liability relating to the same.

Therefore, it is not likely Plaintiff would prevail on the merits in its conversation claim because Plaintiff has failed to establish a prima facie case that it legally owned or had the immediate right to possess the stock, Pharmacy, or any of Pharmacy's assets or property.

### D. Plaintiff Would Not Prevail on Its Breach of Contract Claim because Paramount Does Not Have Any Enforceable Contracts with Iqbal.

For Plaintiff to prevail in a breach of contract claim, Plaintiff must demonstrate that a specific provision of the contract between Plaintiff and Defendant was breached. *See Gianelli v. RE/MAX of New York, Inc.*, 41 N.Y.S.3d 273, 274 (2d Dep't 2016). As discussed above, the Loan Documents and MSA were not enforceable contracts which Iqbal could have breached, so Plaintiff would not have an enforceable contract which it could allege Defendant breached. However,

*arguendo*, Plaintiff has still not argued any of these elements were satisfied or that it is probable Plaintiff would prevail on the merits. Plaintiff's allegations about the nature and character of Defendant's breach are also factually inaccurate. Iqbal was unaware that he even executed a Power of Attorney form and did not understand the effect of that document let alone revoke it at any time. He also did not take any action that would constitute "excluding" Plaintiff prior to Nadeem indicating Plaintiff no longer wished to work with Iqbal.

Therefore, it is not likely Plaintiff would prevail on the merits in its conversation claim because Plaintiff has failed to establish a prima facie case that it legally owned or had the immediate right to possess the stock, Pharmacy, or any of Pharmacy's assets or property.

### E. Plaintiff Would Not Prevail on Its Tortious Interference Claim Because No Valid Contract Existing between Plaintiff and Pharmacy for Defendant with which Defendant Could Have Interfered.

Fifth, to prevail on Plaintiff's tortious interference with a contract claim, Plaintiff must show that (1) a valid contract exists between Plaintiff and a third party, (2) Defendant personally knew of that contract, (3) Defendant intentionally procured the third-party's breach of that contract with justification, and (4) damages. *Nagan Const., Inc. v. Monsignor McClancy Memorial High School*, 986 N.Y.S.2d 532, 533 (2d Dep't 2014). Plaintiff has not argued any of these elements were satisfied or that it is probable Plaintiff would prevail on the merits. As explained above, no valid contract existed between Pharmacy and Plaintiff for Iqbal to have tortiously interfered in, but even if there were such a contract, *arguendo*, Defendant was unaware of it since he was induced to execute the MSA but fraud in the factum as described above. To the extent any such contract were to have existed, Defendant did not have the requisite knowledge to procure breach thereof by Pharmacy intentionally. It is also Defendant's position that Plaintiff did not have any damages for which Plaintiff could recover since Plaintiff never rendered services to Pharmacy.

Therefore, it is not likely Plaintiff would prevail on the merits in its tortious interference claim because Plaintiff has failed to establish a prima facie case that Defendant had personal knowledge of a valid contract between Plaintiff and Pharmacy or that Defendant intentionally induced breach thereof.

### III. The Harm to Defendant Outweighs Any Hardship Plaintiff May Experience.

Paramount argues that it is in the best interest of the parties to maintain the status quo. Iqbal wholeheartedly agrees: Iqbal is currently operating the pharmacy during regular business hours, preserving its goodwill with providers, prescribers, and patients, and generating revenue. If the Court were to grant the relief sought by Plaintiff, not only would Iqbal be at a significant loss for the time and money he invested in Pharmacy, but he would be unable to work and attempt to earn a living. Also, Plaintiff would be unjustly enriched by the fruits of Iqbal's efforts.

Iqbal has worked tirelessly, investing tens of thousands of dollars or more, tapping his personal network to build clientele, and creating new business relationships in an attempt to bring the Pharmacy out of the deep red he found it in when he acquired it. It is Iqbal's main source of income and way of sustaining his livelihood, though he is not currently profiting from it. Even if Plaintiff prevailed on all claims, Plaintiff would be unjustly enriched thereby and Iqbal would be damaged unnecessarily, especially considering the strong merits of his defense and potential counterclaims Iqbal may file. Further, if the Court allows Plaintiff to take control over Pharmacy, the Court is granting Plaintiff the ultimate relief sought and irreparably damaging Iqbal. Once Plaintiff takes control of Pharmacy and excludes Iqbal, the work he has done to rehabilitate Pharmacy and its reputation will have been for nothing, and his investment will go to waste permanently by the time this matter is litigated.

16

Therefore, the harm to Defendant is in great excess as compared to the potential harm to Plaintiff if the injunction does not ensue, especially since Plaintiff's remedies at law would be adequate to compensate Plaintiff for any and all harm or damage alleged.

## CONCLUSION

For the foregoing reasons, Plaintiff's Emergency Motion for Temporary Injunctive Relief should be denied in its entirety.

Dated: June 24, 2025

Respectfully Submitted,

/s/ Sohela Suri

Sohela Suri, Esq.
Suri Law PLLC
626 RexCorp Plaza
Suite 606
Uniondale, New York 11556
Ph.: 212.616.8488
Fax: 212.616.8480
E.: sohela@surilawpllc.com
*Attorney for Defendant Muhammad Assad Iqbal erroneously s/h/a Muhammed Assad Iqbal*

## WORD COUNT CERTIFICATION

Pursuant to S.D.N.Y Loc. Civ. Rule 7.1 and Individual Rule of Prac. of Judge Cathy Seibel 2(b)(i), I hereby certify that, according to the Microsoft Word count function, the total number of words in this Defendant's Response in Opposition to Plaintiff's Motion for Temporary Injunctive Relief is Five Thousand Two Hundred and Two (5,202) words.

Dated: June 24, 2025

Respectfully Submitted,

/s/ Sohela Suri

Sohela Suri, Esq.
Suri Law PLLC
626 RexCorp Plaza
Suite 606
Uniondale, New York 11556
Ph.: 212.616.8488
Fax: 212.616.8480
E.: sohela@surilawpllc.com
*Attorney for Defendant Muhammad Assad Iqbal erroneously s/h/a Muhammed Assad Iqbal*