## SECURITY AGREEMENT

This Security Agreement ("Agreement"), is entered into and effective this 04 day of 02, 2025 ("the Effective Date"), made by **MUHAMMAD ASSAD IQBAL**, an INDIVIDUAL, having an address of 2 Stubbe Drive, Stony Point, New York 10980 along with **HEALTH HAVEN CORP.**, a CORPORATE ENTITY, having an address of 105 Croton Avenue, Ossining, New York 10562 (the "Grantor"), in favor of **PARAMOUNT PHARMACY GROUP LLC**, a LIMITED LIABILITY COMPANY, having an address of 377 Hoes Lane, Suite 105, Piscataway, New Jersey 08854, (the "Secured Party").

WHEREAS, on the date hereof, the Secured Party has made a loan to the Grantor in an aggregate unpaid principal amount of **$556,788.56** (the "Loan"), evidenced by that certain promissory note of even date herewith (as amended, supplemented or otherwise modified from time to time, the "Promissory Note") made by the Grantor and payable to the order of the Secured Party; and

WHEREAS, this Agreement is given by the Grantor in favor of the Secured Party to secure the payment and performance of all of the Secured Obligations; and

WHEREAS, it is a condition to the obligations of the Lender to make the Loan under the Promissory Note that the Grantor execute and deliver this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Definitions</u>.

    1.1. Unless otherwise defined herein, terms used herein that are defined in the UCC shall have the meanings assigned to them in the UCC. However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

    1.2. For purposes of this Agreement, the following terms shall have the following meanings:

        1.2.1. "Collateral" has the meaning set forth in Section 2.

        1.2.2. "Event of Default" has the meaning set forth in the Promissory Note.

        1.2.3. "First Priority" means, with respect to any lien and security interest purported to be created in any Collateral pursuant to this Agreement, such lien and security interest is the most senior lien to which such Collateral is subject (subject only to liens permitted under the Promissory Note).

1.2.4. "Proceeds" means "proceeds" as such term is defined in section 9-102 of the UCC and, in any event, shall include, without limitation, all dividends or other income from the Collateral, collections thereon or distributions with respect thereto.

1.2.5. "Secured Obligations" has the meaning set forth in Section 3.

1.2.6. "UCC" means the Uniform Commercial Code as in effect from time to time in the State of New Jersey or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

2. <u>Grant of Security Interest</u>. The Grantor hereby pledges and grants to the Secured Party, and hereby creates a continuing First Priority lien and security interest in favor of the Secured Party in and to all of its right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising or acquired (collectively, the "Collateral"):

2.1. all shares of stock in **HEALTH HAVEN CORP.**, such shares having been endorsed to the Secured Party and held in escrow as security in the event of a default by the Grantor;

2.2. all of **HEALTH HAVEN CORP.'s** fixtures and personal property of every kind and nature including all customer lists and information, accounts (including receivables), goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), money, deposit accounts, and any other contract rights or rights to the payment of money; and

2.3. all of **HEALTH HAVEN CORP.'s** proceeds and products of each of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to the Grantor from time to time with respect to any of the foregoing.

3. <u>Secured Obligations</u>. The Collateral secures the due and prompt payment and performance of:

3.1. the obligations of the Grantor from time to time arising under the Promissory Note, this Agreement or otherwise with respect to the due and prompt payment of (i) the principal of and premium, if any, and interest on the Loan (including

   interest accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise and (ii) all other monetary obligations, including fees, costs, attorneys' fees and disbursements, reimbursement obligations, contract causes of action, expenses and indemnities, whether primary, secondary, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), of the Grantor under or in respect of the Promissory Note and this Agreement; and

 3.2. all other covenants, duties, debts, obligations and liabilities of any kind of the Grantor under or in respect of the Promissory Note, this Agreement or any other document made, delivered or given in connection with any of the foregoing, in each case whether evidenced by a note or other writing, whether allowed in any bankruptcy, insolvency, receivership or other similar proceeding, whether arising from an extension of credit, issuance of a letter of credit, acceptance, loan, guaranty, indemnification or otherwise, and whether primary, secondary, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise (all such obligations, covenants, duties, debts, liabilities, sums and expenses set forth in Section 3 being herein collectively called the "Secured Obligations").

4. <u>Perfection of Security Interest and Further Assurances</u>.

 4.1. The Grantor shall, from time to time, as may be required by the Secured Party with respect to all Collateral, take all actions as may be requested by the Secured Party to perfect the security interest of the Secured Party in the Collateral, including, without limitation, with respect to all Collateral over which control may be obtained within the meaning of sections 8-106, 9-104, 9-105, 9-106 and 9-107 of the UCC, as applicable, the Grantor shall take all actions as may be requested from time to time by the Secured Party so that control of such Collateral is obtained and at all times held by the Secured Party. All of the foregoing shall be at the sole cost and expense of the Grantor.

 4.2. The Grantor hereby irrevocably authorizes the Secured Party at any time and from time to time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement or amendment relating to the Collateral, including any financing or continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the security interest granted by the Grantor hereunder, without the signature of the Grantor where permitted by law,

including the filing of a financing statement describing the Collateral as all assets now owned or hereafter acquired by the Grantor, or words of similar effect. The Grantor agrees to provide all information required by the Secured Party pursuant to this Section promptly to the Secured Party upon request.

4.3. The Grantor agrees that at any time and from time to time, at the expense of the Grantor, the Grantor will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable, or that the Secured Party may request, in order to create and/or maintain the validity, perfection or priority of and protect any security interest granted or purported to be granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder or under any other agreement with respect to any Collateral.

5. Representations and Warranties. The Grantor represents and warrants as follows:

5.1. At the time the Collateral becomes subject to the lien and security interest created by this Agreement, the Grantor will be the sole, direct, legal and beneficial owner thereof, free and clear of any lien, security interest, encumbrance, claim, option or right of others except for the security interest created by this Agreement.

5.2. The pledge of the Collateral pursuant to this Agreement creates a valid and perfected First Priority security interest in the Collateral, securing the payment and performance when due of the Secured Obligations.

5.3. It has full power, authority and legal right to borrow the loan and pledge the Collateral pursuant to this Agreement.

5.4. Each of this Agreement and the Promissory Note has been duly authorized, executed and delivered by the Grantor and constitutes a legal, valid and binding obligation of the Grantor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and subject to equitable principles (regardless of whether enforcement is sought in equity or at law).

5.5. No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the borrowing of the loan and the pledge by the Grantor of the Collateral pursuant to this Agreement or for the execution and delivery of the Promissory Note and this Agreement by the Grantor or the performance by the Grantor of its obligations thereunder.

5.6. The execution and delivery of the Promissory Note and this Agreement by the Grantor and the performance by the Grantor of its obligations thereunder, will not violate any provision of any applicable law or regulation or any order,

judgment, writ, award or decree of any court, arbitrator or governmental authority, domestic or foreign, applicable to the Grantor or any of its property, or the organizational or governing documents of the Grantor or any agreement or instrument to which the Grantor is party or by which it or its property is bound.

5.7. The Grantor has taken all action required on its part for control (as defined in sections 8-106, 9-104, 9-105, 9-106 and 9-107 of the UCC, as applicable) to have been obtained by the Secured Party over all Collateral with respect to which such control may be obtained pursuant to the UCC. No person other than the Secured Party has control or possession of all or any part of the Collateral.

6. Covenants. The Grantor covenants as follows:

6.1. The Grantor will not change its legal name, identity, type of organization, jurisdiction of organization, corporate structure, location of its chief executive office or its principal place of business or its organizational identification number.

6.2. The Grantor will not remove the Collateral from its current business location.

6.3. The Grantor shall, at its own cost and expense, defend title to the Collateral and the First Priority lien and security interest of the Secured Party therein against the claim of any person claiming against or through the Grantor and shall maintain and preserve such perfected First Priority security interest for so long as this Agreement shall remain in effect.

6.4. The Grantor will not sell, offer to sell, dispose of, convey, assign or otherwise transfer, grant any option with respect to, restrict, or grant, create, permit or suffer to exist any mortgage, pledge, lien, security interest, option, right of first offer, encumbrance or other restriction or limitation of any nature whatsoever on, any of the Collateral or any interest therein.

6.5. The Grantor will keep the Collateral in good order and repair and will not use the same in violation of law or any policy of insurance thereon. The Grantor will permit the Secured Party, or its designee, to inspect the Collateral at any reasonable time, wherever located.

6.6. The Grantor will pay promptly when due all taxes, assessments, governmental charges, and levies upon the Collateral or incurred in connection with the use or operation of the Collateral or incurred in connection with this Agreement.

7. Remedies Upon Default.

7.1. Upon the occurrence of any Event of Default and at any time thereafter, the Secured Party may declare all obligations secured hereby immediately due and payable and shall have, in addition to any remedies provided herein or by any

applicable law or in equity, all the remedies of a secured party under the UCC or other applicable law. The Secured Party's remedies include, but are not limited to, to the extent permitted by law, the right to (a) have the Escrow Agent release the original share certificate of the Grantor to the Secured Party, along with all ancillary transfer documents, thereby transferring ownership of the Grantor to the Secured Party, (b) peaceably by its own means or with judicial assistance enter the Grantor's premises and take possession of the Collateral without prior notice to the Grantor or the opportunity for a hearing, (c) dispose of the Collateral on the Grantor's premises, and (d) require the Grantor to assemble the Collateral and make it available to the Secured Party at at place designated by the Secured Party. If notice prior to disposition of the Collateral or any portion thereof is necessary under applicable law, written notice mailed to the Grantor five days prior to the date of such disposition shall constitute reasonable notice, but notice given in any other reasonable manner shall be sufficient. So long as the sale of the Collateral is made in a commercially reasonable manner, the Secured Party may sell such Collateral on such terms and to such purchaser(s) as the Secured Party in its absolute discretion may choose, without assuming any credit risk and without any obligation to advertise or give notice of any kind other than that necessary under applicable law. To the extent permitted by applicable law, the Grantor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by it of any rights hereunder. The Grantor hereby waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if an.

7.2. If the Secured Party shall determine to exercise its rights to sell all or any of the Collateral pursuant to this Section, the Grantor agrees that, upon request of the Secured Party, the Grantor will, at its own expense, do or cause to be done all such acts and things as may be necessary to make such sale of the Collateral or any part thereof valid and binding and in compliance with applicable law.

8. <u>No Waiver and Cumulative Remedies</u>. The Secured Party shall not by any act, delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default. All rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies provided by law.

9. <u>Security Interest Absolute</u>. The Grantor hereby waives demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, Collateral received or delivered or other action taken in reliance hereon and all other demands and notices of any description. All rights of the Secured Party and liens and security interests hereunder, and all Secured Obligations of the Grantor hereunder, shall be absolute and unconditional irrespective of:

9.1. any illegality or lack of validity or enforceability of any Secured Obligation or any related agreement or instrument;

9.2. any change in the time, place or manner of payment of, or in any other term of, the Secured Obligations, or any rescission, waiver, amendment or other modification of the Promissory Note, this Agreement or any other agreement, including any increase in the Secured Obligations resulting from any extension of additional credit or otherwise;

9.3. any taking, exchange, substitution, release, impairment or non-perfection of any Collateral or any other collateral, or any taking, release, impairment, amendment, waiver or other modification of any guaranty, for all or any of the Secured Obligations;

9.4. any manner of sale, disposition or application of proceeds of any Collateral or any other collateral or other assets to all or part of the Secured Obligations;

9.5. any default, failure or delay, wilful or otherwise, in the performance of the Secured Obligations;

9.6. any defense, set-off or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, the Grantor against the Secured Party; or

9.7. any other circumstance (including, without limitation, any statute of limitations) or manner of administering the loan or any existence of or reliance on any representation by the Secured Party that might vary the risk of the Grantor or otherwise operate as a defense available to, or a legal or equitable discharge of, the Grantor or any other grantor, guarantor or surety.

10. <u>Amendments</u>. None of the terms or provisions of this Agreement may be amended, modified, supplemented, terminated or waived, and no consent to any departure by the Grantor therefrom shall be effective unless the same shall be in writing and signed by the Secured Party and the Grantor, and then such amendment, modification, supplement, waiver or consent shall be effective only in the specific instance and for the specific purpose for which made or given.

11. <u>Addresses For Notices</u>. All notices and other communications provided for in this Agreement shall be in writing and shall be given in the manner and become effective as set forth in the Promissory Note, and addressed to the respective parties at their addresses as specified on the first page of this Agreement or as to either party at such other address as shall be designated by such party in a written notice to each other party.

12. <u>Continuing Security Interest; Further Actions</u>. This Agreement shall create a continuing First Priority lien and security interest in the Collateral and shall (a) remain in full force and effect until payment and performance in full of the Secured Obligations, (b) be binding upon the Grantor, its successors and assigns, and (c) inure to the benefit of the Secured Party and its successors, transferees and assigns; provided that the Grantor may not assign or otherwise

transfer any of its rights or obligations under this Agreement without the prior written consent of the Secured Party.

13.     Termination; Release. On the date on which all Secured Obligations have been paid and performed in full, the Secured Party will, at the request and sole expense of the Grantor, (a) duly assign, transfer and deliver to or at the direction of the Grantor (without recourse and without any representation or warranty) such of the Collateral as may then remain in the possession of the Secured Party, together with any monies at the time held by the Secured Party hereunder, and (b) execute and deliver to the Grantor a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement.

14.     Governing Law. This Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the laws of the State of New Jersey.

15.     Counterparts. This Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

**HEALTH HAVEN CORP.**

_____
By: Muhammad Assad Iqbal, President on behalf of Health Haven Corp.

STATE OF NEW _Jersey_     )
                          SS )
COUNTY OF _Morris_        )

I certify that on the __4th__ day of __February__, __2025__, **Muhammad Assad Iqbal** personally came before me and acknowledged under oath, to my satisfaction, that this person:

(a)  Is President of Health Haven Corp.;
(b)  Has the authority to sign this security agreement; and
(c)  Signed and delivered this security agreement as the act of **COMPANY**.

_____
NOTARY PUBLIC  JEFFREY HELDMAN
(SEAL)   ATTORNEY AT LAW
         STATE OF NEW JERSEY
         #013302012

Paramount Pharmacy Group LLC v. Iqbal
Case No. 7:25-cv-04780-CS
Exhibit 2 - Page 8 of 9

_____
By: Muhammad Assad Iqbal, Individually

STATE OF NEW _Jersey_       )
                            SS )
COUNTY OF _Morris_          )

I certify that on the __4th__ day of __February__, __2025__, Muhammad Assad Iqbal personally came before me and acknowledged under oath, to my satisfaction, that this person:

(a) was the person whose name is subscribed to this security agreement; and

(b) was authorized to and did execute this security agreement.

_____
NOTARY PUBLIC
(SEAL)   **JEFFREY HELDMAN**
         **ATTORNEY AT LAW**
         **STATE OF NEW JERSEY**
         AU1330201 2